**UNITED STATES of America,**
**Appellee,**

v.

**Frank J. BIFULCO, also known**
**as "Butchie," Defendant–**
**Appellant.**

**No. 03–1485.**

United States Court of Appeals,
Second Circuit.

April 11, 2005.

Thomas Theophilos, Buffalo, New York, for Appellant.

Anthony M. Bruce, Assistant United States Attorney, Buffalo, New York (Michael A. Battle, United States Attorney for the Western District of New York), for Appellees.

PRESENT: SACK, SOTOMAYOR, and WESLEY, Circuit Judges.

SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from the United States District

Court for the Western District of New York (Arcara, C.J.), it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Defendant–Appellant Frank J. Bifulco appeals the judgment imposed in the United States District Court for the Western District of New York, following a jury verdict convicting him of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371; wire fraud in violation of 18 U.S.C. § 1343 and § 2(b); mail fraud in violation of 18 U.S.C. § 1341 and § 2(b); and use of fire to commit a federal felony in violation of 18 U.S.C. § 844(h)(1) and § 2(b). The district court sentenced Bifulco principally to a term of imprisonment of 130 months. On appeal, Bifulco argues that the evidence of his specific intent to defraud Allstate Insurance Company ("Allstate") was insufficient to support his conviction on these four counts.[1] We assume familiarity by the parties with the facts and procedural history of the case.

Although we review *de novo* a district court's decision regarding the sufficiency of evidence for conviction, a defendant challenging a conviction on the basis of evidentiary insufficiency "bears a heavy burden." *United States v. Henry*, 325 F.3d 93, 103 (2d Cir.2003). When reviewing the sufficiency of evidence forming the basis for a conviction, "this Court will view the evidence in the light most favorable to the government, and constru[e] all permissible inferences in its favor." *United States v. Reyes*, 157 F.3d 949, 955 (2d Cir.1998) (alteration in original) (internal quotations omitted). A jury's verdict must be upheld if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also United States v. Morrison*, 153 F.3d 34, 49 (2d Cir.1998).

The mail fraud statute, codified at 18 U.S.C. § 1341, prohibits in relevant part the use of the mails in furtherance of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Interpreting this statutory language, this Court has established a three-prong test for a mail fraud conviction: the government must prove "(1) use of the mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme." *United States v. Kinney*, 211 F.3d 13, 17 (2d Cir.2000) (internal quotation marks omitted). The wire fraud statute, codified at 18 U.S.C. § 1343, contains a parallel provision to § 1341. Section 1343 prohibits in relevant part the use of interstate wires in furtherance of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." This Court's interpretation of § 1343 draws from its reading of § 1341. To establish a defendant's violation of the wire fraud statute, the government must prove "the existence of a scheme to defraud, that money or property were the object of the scheme, and that [the] defendant used interstate wires in furtherance of that scheme." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir.1999).

Only the "scheme to defraud" elements of §§ 1341 and 1343 are implicated by Bifulco's appeal. "Critical to a showing of a scheme to defraud [under the mail and

---

1. Bifulco also argues on appeal that it was not reasonably foreseeable that his conduct would result in the use of the mail or the wires; that he was convicted as a result of an unconstitutionally motivated selective prosecution; and that the district court made numerous evidentiary rulings that deprived him of a fair trial. We have considered these claims and find them lacking in merit.

wire fraud statutes] is proof that [the] defendants possessed a fraudulent intent." *United States v. Starr*, 816 F.2d 94, 98 (2d Cir.1987). While the government does not have to prove that the scheme to defraud caused actual injury, "it must ... prove that defendants *contemplated* some actual harm or injury to their victims. Only a showing of intended harm will satisfy the element of fraudulent intent." *Id. Starr* emphasized the importance of this intent requirement to a mail or wire fraud conviction, observing that "[m]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit must be coupled with a contemplated harm to the victim." *Id.* Similarly, "[i]t is not sufficient that [the] defendant realizes that the scheme is fraudulent and that it has the capacity to cause harm to its victims." *Guadagna*, 183 F.3d at 129; *see also United States v. Gabriel*, 125 F.3d 89, 96–97 (2d Cir.1997) (holding that "some realization" that a scheme may be fraudulent and potentially harmful does not alone automatically satisfy the "intent to harm" requirement of the mail fraud and wire fraud statutes); *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir.1996) (holding that the government must prove defendant's intent to harm for a § 1341 or § 1343 conviction).

Bifulco asserts that insufficient evidence exists of his specific intent to defraud Allstate to support his convictions for wire or mail fraud. We agree with Bifulco that no direct proof exists that Bifulco intended to harm Allstate by filing a false insurance claim for Elizabeth Tata's destroyed Nissan. While Angelo Albert testified that he aimed to destroy the car so that he could file a false insurance claim for it, neither Albert nor Tata ever told Bifulco of their intentions to file a false insurance claim for the burned vehicle. Nor did Tata testify that Bifulco participated in her conversations with Albert about filing a false insurance claim.

Instead, Bifulco was only told that Tata had driven the car in excess of the mileage permitted by her lease. Bifulco also knew that Tata wished to use illicit methods—such as rolling back the odometer—to avoid paying for the excess mileage. Ample evidence supports the proposition that Albert and Bifulco collaborated to destroy Tata's car by arson so that Tata would not incur additional mileage charges.

The question we must resolve, then, is whether the jury could have inferred Bifulco's specific intent to defraud Allstate—even in the absence of direct proof of this specific intent—from Bifulco's awareness of Tata's motivation for destroying the Nissan. We believe that the jury could have done so. While the record does not directly establish Bifulco's awareness of the scope of insurance coverage for Tata's vehicle, direct proof of this fact is not necessary to infer that Bifulco knew that Tata would file a false insurance claim upon the intentional destruction of the Nissan. *Cf. Guadagna*, 183 F.3d at 129–30 (holding that direct proof of the defendant's fraudulent intent is not necessary for wire fraud conviction and that circumstantial evidence may suffice). Tata did not buy her car from Mike Barney Nissan but leased it from them. Tata only worried about the excess mileage accrual because she owed an obligation to Nissan not to exceed the prescribed mileage limit under her lease. Because Bifulco knew that the vehicle was leased, he *ipso facto* knew that the vehicle had to be returned to Nissan or that Tata would be liable to Nissan for its cost. Because Tata was reluctant to pay Nissan for the excess mileage accrual, the notion that she would intentionally destroy the car in order to avoid excess mileage charges, but then pay Nissan for the cost of the ruined vehicle, defies common sense.

Given that Tata was unable (or at least unwilling) to pay Nissan for the excess

mileage she had accrued, the submission of a false insurance claim for the Nissan's destruction appears to have been the *only* route for Tata to evade payment for the car. At the time of the crime, Bifulco was a fifty-eight year old automobile owner. It is implausible that Bifulco would participate in the destruction of a leased car without considering the subsequent financial ramifications for Tata. *Cf. United States v. Morgan,* 385 F.3d 196, 206–07 (2d Cir.2004) (finding that defendant's specific intent to commit conspiracy could be inferred from overwhelming evidence that defendant knew that she was involved in some form of smuggling). Given the circumstances surrounding the destruction of Tata's leased car, we believe that a rational trier of fact could have found that Bifulco's participation in the arson of Tata's Nissan demonstrated that he possessed the requisite specific intent to assist in defrauding the insurer.

At sentencing, the district court imposed a concurrent sentence of 10 months for the commission of the wire fraud, mail fraud, and conspiracy offenses and a consecutive 120–month imprisonment term for use of fire in the commission of a federal felony under Count 4 of the Superceding Indictment. The Sentencing Guidelines mandated a determinate sentence of 10 years for the use-of-fire offense consistent with the determinate sentence dictated by the underlying statute, *see* 18 U.S.C. § 844(h)(1); U.S.S.G. § 2K2.4.

In calculating Bifulco's Guidelines' range and determining his sentence for the fraud and conspiracy convictions, the district court applied the base offense level of 6 pursuant to § 2B1.1(a) and grouped the three crimes together for calculation purposes. The court then applied a four-level enhancement under § 2B1.1(b)(1)(C) based upon the amount of money involved in the fraud and applied a two-level enhancement

for obstruction of justice pursuant to § 3C1.1.

While Bifulco would be entitled to a *Crosby* remand had he asserted a Sixth Amendment claim, *see generally United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005), he failed to do so in his briefs, nor has he provided this Court with a 28(j) letter in the wake of *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *Crosby;* or *United States v. Williams,* 399 F.3d 450 (2d Cir. 2005). Hence, we do not address the constitutionality of Bifulco's sentence.

For the foregoing reasons, the judgment of the district court is AFFIRMED.