94 F.3d 653
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harold Wayne KUENEMAN, Defendant-Appellant.
 No. 94-10566.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 4, 1995.
Decided Aug. 20, 1996.
 
 Before: BROWNING, CANBY and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Reverend Harold Wayne Kueneman appeals his conviction under 18 U.S.C. § 641. We reverse in part, affirm in part, and remand.
 
 I.
 
 3
 Kueneman was president of Phoenix Lighthouse Ministries, Inc. ("PLM"), a non-profit organization devoted to ministering to the homeless and providing food and shelter. PLM participated in the Department of Housing and Urban Development's "dollar-a-year" lease program, under which the government leases HUD-acquired single family homes to suitable non-profit organizations for $1.00 a year, and the non-profit organizations agree to sublease the HUD property to qualified homeless persons.
 
 
 4
 According to trial testimony, Kueneman's daughter, Heidi Kueneman Ahart, stayed in one of PLM's HUD houses for approximately six weeks after quarrelling with her husband. Heidi's stay violated HUD regulations, which prohibit PLM employees from obtaining "personal or financial interest or benefit from the lease ... either for himself or herself or for those with whom he or she has family or business ties ...". 24 C.F.R. § 291.435(b).
 
 
 5
 The government also contended Kueneman used PLM to fraudulently obtain benefits for himself, his family, and his friends. The district court granted Kueneman's motion for acquittal on two counts, and a jury acquitted him on fifteen others. The jury found Kueneman guilty on count 10, which alleged Kueneman "converted" a HUD house by allowing Heidi to stay there for six weeks. The district court sentenced Kueneman to eighteen months in prison. Kueneman appeals.[1]
 
 II.
 
 6
 Section 641 prohibits anyone from "embezzl[ing], steal[ing], purloin[ing], or knowingly convert[ing] to his use or the use of another ... any ... thing of value of the United States or of any department or agency thereof...." Kueneman argues HUD homes are not "things of value" within the meaning of § 641 because the statute merely codified common-law personal property crimes: embezzlement, theft, purloining and conversion. See Chappell v. United States, 270 F.2d 274 (9th Cir.1959). Because these crimes did not apply to real property at common law,[2] Kueneman argues he could not, as a matter of law, have violated § 641.
 
 
 7
 The government argues we should restrict Chappell to cases involving intangible property and adopt the view of several other circuits that § 641 is not limited to "things of value" that could be converted, stolen, embezzled or purloined at common-law.[3] We need not reach this issue, however, because even if a HUD home can be "converted" under § 641, the government's evidence of conversion was insufficient as a matter of law.
 
 
 8
 The government presented evidence that Kueneman misused the HUD house, but not all misuse of government property is conversion. See United States v. Eden, 659 F.2d 1376, 1379 (9th Cir.1981). To prove conversion, the government must show Kueneman's misuse of the HUD house was "a serious interference with the [government's] property rights." United States v. Scott, 789 F.2d 795, 798 (9th Cir.1986); see also Eden, 659 F.2d at 1379.
 
 
 9
 A "serious interference" is one that prevents the government from making some other use of the property. See, e.g., United States v. Collins, 56 F.3d 1416, 1421 (D.C.Cir.1995) (noting that a government employee who merely used government computers to store personal information did not violate § 641, because his work did not interfere with the government's use of the computer); United States v. Wilson, 636 F.2d 225, 228 (8th Cir.1980) (holding that a government employee who used a government secretary for personal business did not violate § 641 because "the [government] left [the employee] and his secretary with little or no assigned work during the period," so the private work did not interfere with the secretary's government work).
 
 
 10
 The government offered no evidence that it had other contemporaneous uses for the HUD home. The government notes that many people in the general population were homeless, but it failed to identify any evidence about use of the specific HUD home that Kueneman misused. The government cannot prove substantial interference with its property rights if PLM did not turn away any eligible homeless persons during Heidi's six-week stay in the HUD house and the HUD house might have remained unrented, unoccupied, unsold, unimproved and otherwise unused during those six weeks had Heidi not lived in it. It is quite possible that no qualified homeless person applied to live in the HUD unit in which Heidi stayed. The weather during those six weeks may have been particularly mild; few persons may have wished to abide by HUD's rules, which prohibit alcohol consumption in HUD homes; and many may not have liked the house's undesirable location or its condition. Because the government did not offer sufficient evidence of a substantial interference, we reverse Kueneman's conviction on Count 10.
 
 III.
 
 11
 The jury hung on count 2, which alleged Kueneman embezzled a $12,000 FEMA check. Kueneman argues he had loaned the money to PLM, which used it to provide shelter and essentials to the homeless. He argues that when FEMA reimbursed PLM for these services, PLM repaid him.
 
 
 12
 We note the government charged Kueneman with stealing FEMA funds, not PLM assets. If, as some evidence suggests, PLM had already earned the money, the check belonged to PLM when PLM received it. Whatever PLM then did with the money may therefore be immaterial for purposes of the § 641 count.
 
 
 13
 However, a reasonable jury could have convicted Kueneman on this count, because at least two witnesses testified PLM's rosters and receipts were altered at Kueneman's request. Kueneman's ex-wife, Ramona Ferguson, testified that while homeless people did stay in PLM's shelters, Kueneman had her and others add names to the roster to inflate the figures. Ferguson also testified that PLM doctored grocery receipts, and several exhibits appear to support her story. Jennifer Johnson, who worked for PLM, also testified that PLM did not keep adequate rosters of the homeless people who stayed in PLM's HUD houses. She said she helped them recreate the rosters by "guessing," and identified her work on several government exhibits, but said she did not lie.
 
 
 14
 Viewing this evidence in the light most favorable to the government, we believe a reasonable jury could find PLM did not "earn" the FEMA money and Kueneman embezzled it from the government. We conclude, therefore, the district court did not err in denying Kueneman's motion for acquittal on count 2.
 
 IV.
 
 15
 We find that Kueneman's conviction under 18 U.S.C. § 641 is not supported by sufficient evidence, and is therefore reversed. We affirm the district court's denial of Kueneman's motion to acquit on count 2, and remand this count for retrial.
 
 
 16
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 None of Kueneman's alleged co-conspirators received jail time. Kueneman's sister-in-law pled guilty to a misdemeanor for consuming government food worth a few dollars. A jury acquitted Kueneman's brother on all counts. Kueneman's wife pled guilty to "converting" a HUD house by allowing Heidi to live there for six weeks, and received probation
 
 
 [2]
 See e.g., United States v. Gaskins, 748 F.Supp. 366, 371 (E.D.N.Car.1990); East River Savings Bank v. Secretary HUD, 702 F.Supp. 448, 455 (S.D.N.Y.1988)
 
 
 [3]
 See, e.g., United States v. Croft, 750 F.2d 1354, 1362 (7th Cir.1984) ("We disagree with the Ninth Circuit's limited, narrow, and unrealistic interpretation in Chappell."); United States v. DiGilio, 538 F.2d 972, 978 (3d Cir.1976) ("Much can be said in favor of the government's argument that Chappell is inconsistent with the interpretation of § 641 by the Supreme Court in Morissette."). Although we recently remarked that we would not reconsider Chappell, United States v. Tobias, 836 F.2d 449, 451 (9th Cir.1988), we have noted that three decades of cases have "seriously undermined" Chappell 's persuasiveness. United States v. Schwartz, 785 F.2d 673, 681 n. 4 (9th Cir.1986)