# United States Court of Appeals
## For the First Circuit

No. 07-1363

UNITED STATES OF AMERICA,

Appellee,

v.

ELSA ODINA HERRERA-MARTINEZ,
a/k/a ROSANA ROLON-ALVARADO,
a/k/a ROSANA R. ALVARADO,
a/k/a ROSANA ROLON,
a/k/a ROSANA A. ROLON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,

and DiClerico,* Senior District Judge.

Jeffrey B. Rubin for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

April 30, 2008

---

*Of the District of New Hampshire, sitting by designation.

**HOWARD**, **Circuit Judge**. Elsa Odina Herrera-Martinez ("Herrera") was convicted by a jury of three counts stemming from her use of personal information, including a Social Security number, that did not belong to her in order to secure subsidized housing under a federal program. She maintains that she cannot be guilty of these offenses because her behavior does not constitute a crime under the three statutes at issue. We do not read the statutes as she does, and we affirm.

## I. Facts

We rehearse the facts in the light most favorable to the jury's verdict. United States v. Girouard, 2008 U.S. App. LEXIS 6481, at *7 (1st Cir. Mar. 28, 2008); United States v. Richardson, 515 F.3d 74, 76 (1st Cir. 2008). When defendants challenge the denial of a motion for a judgment of acquittal, "we review the evidence and all legitimate inferences which may be drawn therefrom in the light most favorable to the government."[1] United States v. Olivo-Infante, 938 F.2d 1406, 1408 (1st Cir. 1991).

High Point Village, a housing development in Roslindale, Massachusetts, provided low-income housing in two ways. First, it operated a tier system providing below-market rent that varied according to the tenant's income. Second, it operated a federally funded rent subsidy program often referred to as Section 8 housing.

---

[1] In this case, the facts are not much disputed.

<u>See</u> 42 U.S.C. §§ 1437 <u>et seq.</u> There was a waiting list for this second program because there were more income-eligible tenants than Section 8 vouchers available. Tenants in the tier program were automatically added to the waiting list for the Section 8 program when their income qualified them for it. High Point Village then automatically distributed vouchers, as they came available, to tenants on the waiting list.

Herrera, an undocumented immigrant from the Dominican Republic, took up residence at High Point Village, using the name and identifying information (including the Social Security number) of one Rosana Rolon Alvarado. Herrera also used a Massachusetts identification card bearing her own picture but Alvarado's information. When Herrera reported a drop in her income, she became eligible for the Section 8 subsidy, but only because she was using the identity of Alvarado, an American citizen. (As an undocumented alien, Herrera could not qualify for federally subsidized housing under her real identity, regardless of her income.)

In April 2005, a Section 8 voucher was automatically assigned to Herrera. In honoring the voucher, the United States Department of Housing and Urban Development paid more than 85% of her rent for the next thirteen months. Soon after HUD began paying part of Herrera's rent, a federal official became suspicious that Herrera was not who she claimed to be. In January 2006 a HUD

special agent attended, undercover, a "recertification" proceeding conducted by High Point Village; he observed Herrera filling out forms certifying she was a United States citizen and using Alvarado's information.

Herrera was arrested in May 2006, after she moved out of High Point Village.  The three-count indictment charged her with use of another's Social Security number, 42 U.S.C. § 408(a)(7)(B); knowingly converting public money or property, 18 U.S.C. § 641; and aggravated identity theft, 18 U.S.C. § 1028A.  Herrera consistently asserted that her conduct did not fall under any of these three statutes.  She moved to quash the indictment and dismiss the case before trial and moved for directed verdict after presentation of the government's evidence.  She raises the same issues on appeal.

## II. Standard of Review

In reviewing a motion for directed verdict, we resolve legal questions de novo.  United States v. Jimenez, 507 F.3d 13, 19 (1st Cir. 2007).  Delineating the scope of the elements of a given offense presents such legal questions.  Id. (whether deceased persons are encompassed in the word "person" as used in 18 U.S.C. § 1028A reviewed de novo); United States v. McFarland, 445 F.3d 29, 31 (1st Cir. 2006) (definition of "actual physical control" of a motor vehicle in 36 C.F.R. § 4.23(a) subject to de novo review).

-4-

## III. Discussion

Herrera claims that none of the three statutes under which she was convicted apply to the conduct of which she was accused. First, she claims that conviction under 18 U.S.C. § 641 requires proof of elements not present in her case. Next, she claims that 42 U.S.C. § 408(a)(7)(B) prohibits the use of a false Social Security number only to obtain a Social Security payment, not to obtain other benefits. Finally, she says that because she is innocent of the first two charges as a matter of law, she must be acquitted of aggravated identity theft because it requires as a predicate one of the other two offenses. We address the arguments pertaining to each statute in turn.

### A. 18 U.S.C. § 641

Section 641 of Title 18[2] was drafted "to collect from scattered sources crimes so kindred as to belong in one category": those that prohibit unlawful taking from the government. Morissette v. United States, 342 U.S. 246, 266-67 (1952). Herrera

---

[2]     The relevant portion reads:
> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . Shall be fined under this title, or imprisoned . . . or both . . . .

18 U.S.C. § 641.

levels three challenges at her conviction under this statute. First, she argues that the statute requires the government to prove "asportation," the carrying-away element of common law larceny. Next, she claims that in order to obtain a conviction under § 641, the government is required to prove an actual loss, and here it did not. Finally, Herrera argues that what she obtained was a residential lease, not a "thing of value of the United States." We find none of these arguments persuasive.

Herrera argues that each of the older crimes from which § 641 was forged contained as an element asportation, a physical carrying away, and that she has not carried anything away from the government. But the enactment of § 641 did more than aggregate existing crimes. The statute also added "knowingly converts," to the list of proscribed activities, as well as "steals," words that do not implicate the common law definition of larceny. See id. This, Justice Jackson wrote for the Court, was an attempt to close gaps between the original common law offenses.

> What has concerned codifiers of the larceny-type offense is that gaps or crevices have separated particular crimes of this general class and guilty men have escaped through the breaches. The books contain a surfeit of cases drawing fine distinctions between slightly different circumstances under which one may obtain wrongful advantages from another's property. The codifiers wanted to reach all such instances.

Id.; see also United States v. Crutchley, 502 F.2d 1195, 1201 (3d Cir. 1974) (citing Morissette and holding that larceny by trick is

encompassed within § 641). Where Congress has gone beyond the common law terms used to define a crime, we will not presume the crime is limited to its common law contours.

Moreover, reading the statute to require asportation would perforce limit § 641 to tangible property, as intangibles cannot be carried away. This reading of the statute is too narrow and is contradicted by the great weight of authority. See United States v. Barger, 931 F.2d 359, 368 (6th Cir. 1991) ("[I]nformation itself is enough to meet the 'thing of value' element of the statute."); United States v. May, 625 F.2d 186, 192 (8th Cir. 1980) ("'thing of value' . . . was the flight time itself" where National Guard planes were used for personal flights); United States v. Girard, 601 F.2d 69, 71 (2d Cir. 1979) ("Although the content of a writing is an intangible, it is nonetheless a thing of value."); see also United States v. Collins, 56 F.3d 1416, 1419 (D.C. Cir. 1995) ("Congress intended to enact a broad prohibition against the misappropriation of anything belonging to the national government, unrestrained by the fine and technical distinctions of the common law."). We hold that asportation is not required in every conviction under 18 U.S.C. § 641.

Herrera also contends that § 641 requires the government to prove an actual loss. We disagree. For this proposition, Herrera cites United States v. Collins, 464 F.2d 1163 (9th Cir.

1972) (2-1).[3]   That case concerned a warrant drawn up by a municipal agency, and cashed by someone who stole it; the Ninth Circuit determined that since the funds released by the bank were bank funds, not government funds, and the warrant itself was not the property of the government, the government had failed to prove a loss and the defendant was entitled to acquittal.  First, Collins is inapplicable to the facts of this case; here, the payments made by HUD were government funds.  But more importantly, Collins is not the law of this circuit.  See United States v. Santiago, 729 F.2d 38, 40 (1st Cir. 1984) ("The statute, however, does not require a showing that the United States was prejudiced.  It merely requires the government to show that a 'thing of value of the United States' has been knowingly received, concealed or retained by the accused with improper intent . . . ." (quoting 18 U.S.C. § 641)).  Nor, for that matter, has Collins been followed by any other circuit.  See United States v. Milton, 8 F.3d 39, 44 (D.C. Cir. 1993); United States v. Scott, 784 F.2d 787, 791 (7th Cir. 1986) (per curiam) (collecting cases in the Seventh Circuit); Barnes, 761 F.2d at 1036

_____

[3]   Herrera also cites United States v. Evans, 572 F.2d 455 (5th Cir. 1978), despite the fact that the Fifth Circuit later expressly repudiated that case's position that proof of actual loss is required under § 641.  See United States v. Barnes, 761 F.2d 1026, 1036 (5th Cir. 1985) ("The legislative history of section 641 as well as the purpose of the statute both lead us to hold that the government need not prove it suffered an actual property loss in order to establish a violation of section 641.").

(Fifth Circuit). We doubt that we are free to revisit this determination, and in any event decline to do so.[4]

Finally, Herrera argues that obtaining subsidized housing is not a violation of 18 U.S.C. § 641 because the residential lease she received for her deception was not "property of the United States." But this argument is a facade. Another perspective allows us to pierce the illusion. Through her deception, Herrera caused HUD to pay her landlord many thousands of dollars. As a consequence of these payments, Herrera received a thing of value to her -- a place to live. We need not decide whether the lease constitutes property of the United States; the payments certainly

---

[4] Even were we to accept Herrera's contention and require proof of loss, it would be easy to come by. First, the funds here, unlike those in Collins, were paid from government accounts. Second, the government introduced evidence that there was a waiting list for the vouchers, and that the vouchers were automatically assigned as they became available to those on the waiting list. The government, then, suffered a loss because it was not able to pass those benefits on to the next qualified applicant on the waiting list. This case, then, is different than United States v. Kueneman, 94 F.3d 653 (9th Cir. 1996), which Herrera cites in support of her proposition that the government has failed to prove actual loss. In an unpublished memorandum disposition, 1996 WL 473690, the Kuneman panel vacated defendant's conviction under § 641, reasoning that the government had failed to introduce evidence that, but for the misuse complained of, the property would have been put to its intended use. In other words, Kueneman had let his daughter stay briefly in a vacant unit intended for the homeless, but the government had introduced no evidence that the unit would otherwise have been occupied by a homeless person. We are therefore not called upon to determine whether we find Kueneman persuasive, as it is distinguishable on its facts. We reiterate that Kueneman rests on the proposition that the government must show an actual loss to prevail under § 641, a proposition only the Ninth Circuit has embraced.

were government funds, converted under false pretenses either to Herrera's use or to the use of her landlord.  The statute requires no more.  See In re Petition for Disclosure of Evidence Taken Before the Special Grand Jury Convened on May 8, 1978, 662 F.2d 362, 369 (5th Cir. 1981) (direct benefit to defendants need not be shown where direct beneficiary was a corporation closely held by defendants and indirect benefit to defendants was obvious).

Herrera's challenges to her conviction under 18 U.S.C. § 641 rest on unduly narrow interpretations of the law or mischaracterization of the facts, and therefore fail.[5]

## B. 42 U.S.C. § 408(a)(7)(B)

Section 408(a)(7)(B) of Title 42 of the United States Code criminalizes the use of a false Social Security number to obtain payments from the government.  Herrera claims that the proscription only applies when the payment is made pursuant to the Social Security Act.  If she were correct, then the housing subsidy she received through the use of a false Social Security number

---

[5]     Herrera briefly adverts to the rule of lenity, claiming that at least the statute is ambiguous in scope and ought to be construed in her favor.  A mere assertion that the rule of lenity ought to mandate acquittal cannot be said to have preserved the issue.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  We note only that the rule of lenity applies in the case of "grievous ambiguity" that persists even after resort to statutory interpretation.  Jimenez, 507 F.3d at 20-21 (quoting United States v. Councilman, 418 F.3d 67, 83 (1st Cir. 2005) (discussing application of rule of lenity)).

would not be within the ambit of the statute, and she would be entitled to an acquittal on this charge as a matter of law. She is mistaken.

When asked to construe a statute we begin with its text. Jimenez, 507 F.3d at 19. Section 408 is the "Penalties" section of the Social Security Act. Subsection (a) denotes as felonies several activities. Subsection (a)(7) provides, in relevant part:

> [Whoever] for the purpose of causing an increase in any payment authorized under this title (<u>or any other program financed in whole or in part from Federal funds</u>), or for the purpose of causing a payment under this title (<u>or any such other program</u>) to be made when no payment is authorized thereunder, or for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled, or for the purpose of obtaining anything of value from any person, or for any other purpose . . .
> (B) with intent to deceive, falsely represents a number to be the social security account number assigned by the Commissioner of Social Security to him or to another person, when in fact such number is not the social security account number assigned by the Commissioner of Social Security to him or to such other person [shall be guilty of a felony].

42 U.S.C. § 408(a) (emphasis added). The inclusion of the parenthetical "or any other program financed in whole or in part from Federal funds" plainly implicates payments such as those paid by HUD to Herrera's landlord for her benefit.[6]

_____

[6] The second parenthetical in subsection (a)(7) refers back to the first for the meaning of "such other program." Thus the

-11-

Not only does subsection (a)(7) apply specifically to causing an unauthorized payment from any federally funded program, but it also applies to using a Social Security number for the purpose of obtaining "any payment or any other benefit" to which the defendant is not entitled, "or for the purpose of obtaining anything of value from any person, or for any other purpose."  In United States v. McGauley, 279 F.3d 62 (1st Cir. 2002), we held that the "any other purpose" language reached a situation where a Social Security number was used as part of a scheme to defraud retail stores.  Id. at 69.  Even if the earlier language in the subsection were not specifically applicable to this case, under McGauley, the catch-all provision "any other purpose" does apply.

Herrera argues that the rest of the activities listed in § 408(a)(1)-(6) all relate to payments under the Social Security Act itself, and that therefore the parenthetical must be read as implicitly limited to that sort of payment.  Quite the contrary: the drafters of this section were indicating that they wished to cast a wider net with this provision than with the others.  The subsections have different foci.  The first six subsections concern misrepresentations of fact and omissions of fact material to payments under the Social Security Act.  But subsection (7) punishes activities related to the Social Security card and number

statute, by its plain terms, reaches the conduct of causing a payment to be made under any program financed in whole or in part from federal funds.

-12-

themselves.  Id. § 408(a)(7)(A) (use of a Social Security account number that has been assigned on the basis of false information); Id. § 408(a)(7)(B) (use of a Social Security number not one's own); Id. § 408(a)(7)(C) (alteration or counterfeiting of Social Security card).

Put more plainly, the subsections Herrera relies on are concerned with lying to the Social Security Administration, but the subsection under which she was convicted concerns misuse of credentials or identifying information provided by the Social Security Administration.  It is not surprising then that the statute would allow prosecution of a person who thereby receives any federal funds, not just those provided for by the Social Security Act.  The reach of the criminal statute is as broad as it is because of the interest the Social Security Administration has in protecting the integrity of its identification and recordkeeping system.  Further examination provides more evidence that all eight subsections in § 408(a) are not limited to the same scope.  Indeed, subsection (8) does not require any payment at all of any kind, making it a felony simply to disclose, use, or compel the disclosure or use of a Social Security number in violation of United States law.  Id. § 408(a)(8).

The cases Herrera cites in support of her narrow reading of the statute are inapposite.  They do not concern the same subsection, or even similar language.  See United States v. Gomez,

969 F.2d 1290, 1293 (1st Cir. 1992) (reversing conviction because blank Social Security cards did not meet legal definition of counterfeit); United States v. Phillips, 600 F.2d 535, 536-37 (5th Cir. 1979) (requiring the government to prove "fraudulent intent" in accordance with the explicit language of § 408(d)); see also United States v. Cormier, 639 F.2d 1177 (5th Cir. 1981) (same). The plain language of § 408(a)(7)(B) encompasses payments from other government programs; Herrera's claim to the contrary is unavailing.[7]

## C. 18 U.S.C. § 1028A

Herrera's only challenge to her conviction under 18 U.S.C. § 1028A is that she was entitled to a judgment of acquittal on the two possible predicate offenses. Because we find no reason to set aside those convictions, we also uphold the conviction for aggravated identity theft.

**Affirmed.**

---

[7] When the statute's text is clear we need go no further. United States v. Roberson, 459 F.3d 39, 51 (1st Cir. 2006). Likewise, Herrera's appeal to the rule of lenity would fail at the first step because the statute is not ambiguous.