# United States Court of Appeals
## For the First Circuit

No. 09-1799

UNITED STATES OF AMERICA,

Appellee,

v.

ALDO PERSICHILLI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor,  U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,[*] Associate Justice,
and Howard, Circuit Judge.

Wendy Sibbison, by appointment of the court, for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief for appellee.

June 14, 2010

---

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**BOUDIN**, <u>Circuit Judge</u>.  Aldo Persichilli was tried and convicted of knowingly possessing a Social Security card with intent to alter it, 42 U.S.C. § 408(a)(7)(C) (2006) ("the alteration count"), and of aggravated identity theft, 18 U.S.C. § 1028A (2006) ("the identity theft count"), for which the intent to alter charge was the predicate offense.  The relevant background facts can be briefly summarized.

In October 2006, Persichilli became a fugitive from justice, and in February 2007, U.S. Marshals found him at a motel in Wilbraham, Massachusetts.  Certain items in his room brought Secret Service agents to the scene, and their search of the room and Persichilli's car uncovered two laptops, printers, duffel bags containing materials used in counterfeiting, a stack of counterfeit $100 bills and a lockbox.  Later evidence indicated that one laptop belonged to Persichilli and that the other belonged to an alleged co-conspirator named Ryan Craig.

Inside the lockbox, the agents found more counterfeiting materials; six original birth certificates in Persichilli's name (several of which had been altered with bleach or Wite-Out®); and an original Social Security card in the name of DaShawn Brown. (Brown later identified the card as his and testified at trial that he had lost this card in 2005.)  On the laptop belonging to Persichilli, agents found two images of Brown's Social Security card with the middle two digits of his number altered, an image of

-2-

Persichilli's driver's license with his birthday altered, and a digital manual that contained four reports--including ones entitled "How to Change Your Identity" and "Get Lost." Both laptops also contained images of U.S. currency.

Persichilli was indicted in November 2008 on four currency counterfeiting counts, 18 U.S.C. §§ 371, 471, 472, 474(a), to which he pled guilty, and the identity theft and alteration counts identified above. After jury trial on the latter two counts in January 2009, Persichilli was convicted on both. Persichilli was sentenced to concurrent terms of 60 and 87 months on the counterfeiting counts, a concurrent term of 60 months on the alteration count, and a consecutive term of 24 months on the identity theft count; forfeiture and restitution payments were also ordered.

On Persichilli's appeal, we start with challenges to his conviction on the alteration count. The alteration provision proscribes (1) a number of acts (2) if done with a listed purpose or "for any other purpose." 42 U.S.C. § 408(a)(7)(C). Persichilli was indicted for "knowingly possess[ing] a Social Security card or counterfeit Social Security card . . . with the intent to alter it" (a listed act with its own scienter element) with "the purpose of obtaining something of value from a person" and "the purpose of obtaining a new identity that would enable him to remain a fugitive from justice." The first purpose is listed; the second, in the

-3-

government's view, is within the statute's catch-all purpose clause ("for any other purpose").

Intent to Alter.  Persichilli first argues that the evidence was insufficient to show that he intended to alter Brown's card, the judge having instructed that this showing was required under the indictment.[1]  Although Persichilli concedes that the jury could have found he was planning some sort of misfeasance with Brown's card, he asserts that no reasonable jury could have found beyond a reasonable doubt that the wrongdoing would consist of altering the physical card.  As noted, the "intent to alter" is only the first of two different scienter requirements required to convict.

The district court denied a motion for acquittal, and our review is de novo.  United States v. Rodriguez-Berrios, 573 F.3d 55, 65-66 (1st Cir. 2009), cert. denied, 130 S. Ct. 1300 (2010).  For us, as for the district judge, the question is whether the evidence viewed "in the light most favorable" to the verdict--along with "all plausible inferences drawn therefrom"--would allow a rational jury using a reasonable doubt standard to side with the government.  United States v. Cruz-Rodriguez, 541 F.3d 19, 26 (1st Cir. 2008), cert. denied, 129 S. Ct. 1017 (2009).

---

[1]The government does not challenge this instruction as correct in light of the indictment.  The same provision under which Persichilli was charged also prohibits "counterfeit[ing] a social security card," 42 U.S.C. § 408(a)(7)(C), but the indictment charged only alteration.

-4-

At trial, Elizabeth Botelho--Persichilli's wife, who was arrested with him and was indicted as a co-conspirator--testified that Persichilli counterfeited currency by taking an actual $1 bill, bleaching and scrubbing the ink off that bill to obtain genuine but blank currency paper, and then printing an image of a $100 bill from his laptop onto the blank currency paper. In October 2006 (she said), Persichilli and Craig discussed their plans to use someone else's Social Security card and a birth certificate to obtain a driver's license in a new name.

A government agent testified to the unique physical characteristics of a genuine Social Security card that made it hard to counterfeit--the feel of the paper, special coloring embedded in the paper, and micro-printing on the signature line. To someone inspecting the card, the altered genuine article might more easily pass muster than a facsimile. So it was plausible that one seeking to assume a new identity verified by a Social Security card would-- if he had hold of a genuine card--more likely seek to alter the physical card than to create one from scratch.

The government also offered evidence as to Persichilli's currency counterfeiting, the many counterfeiting implements he possessed, the birth certificates he had already practiced altering, and the digital images of Brown's Social Security card with altered numbering on his laptop. The government argued to the jury that the digital images were "mock-ups" that Persichilli made

-5-

to try to ensure that he did not make a mistake when he tried to alter the actual Social Security card.

From all this, a jury rationally could conclude that Persichilli wanted a forged Social Security card to get a new driver's license in a different name and was planning to alter Brown's actual Social Security card in much the same way as he altered $1 bills into $100 bills or as he altered the birth certificates.  The evidence sufficiently showed means, method and a specific motive--obtaining a driver's license in a different name--which taken together permitted the jury to find that he intended to alter the card.

Anything of Value.  Next, Persichilli argues that he did not have either of the two statutory purposes (listed above) that the government says support his conviction on the alteration count. Starting with the phrase "for the purpose of obtaining anything of value from any person," 42 U.S.C. § 408(a)(7), Persichilli agrees the jury could have found that he aimed to get a driver's license, but he argues that a driver's license is issued by a government entity and that this provision does not reach misappropriation of something from the government.[2]

_____

[2]In addition to a driver's license, the government also suggested that Persichilli wanted to use an altered Social Security card to open a bank account, get a job, get a credit card or open a safe deposit box; but--given Botelho's testimony about the desire for the license--we accept that this was the main objective. Persichilli also hints that a driver's license is not a "[]thing of value" as required by statute, but he does not develop this

-6-

Persichilli's basic claim is that the word "person" in the statute is limited only to natural persons; if it were read to include entities other than natural persons, he does not suggest that it excludes agencies that issue driver's licenses.  There is some doubt whether the latter issue was properly preserved.  But to answer the first question and treat the second, closely related one as forfeit would not be suitable.  So we address both questions, interpreting the statute de novo.  United States v. Tobin, 552 F.3d 29, 32 (1st Cir. 2009).

Urging a broad reading of "persons," the government cites the Dictionary Act, which provides general rules of statutory construction and says that "the words 'person' and 'whoever' include corporations, companies, associations, firms partnerships, societies, and joint stock companies, as well as individuals."  1 U.S.C. § 1 (2006).  But the Act's definitions do not apply if "the context indicates otherwise," id., and anyway the list's lack of a reference to "government" could be taken in Persichilli's favor.  United States v. United Mine Workers of Am., 330 U.S. 258, 275 (1947).  Based on the omission, some cases "presume" against the word "person" extending to governments.  E.g., Vt. Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S 765, 780 (2000).

But with or without a presumption, context still controls.  E.g., Inyo County v. Paiute-Shoshone Indians, 538 U.S.

argument and we do not consider it.

-7-

701, 711 (2003); United States v. Cooper Corp., 312 U.S. 600, 604-05 (1941).  Not surprisingly, against background doctrines such as sovereign immunity, courts are more likely to read "person" as excluding government entities where the statute is one authorizing suits against or damages from the government;  conversely, when the government is a potential victim or beneficiary--as in this case-- courts have been more likely to read "person" protectively to include the government.[3]

Neither party cites case law or legislative history directly construing "person" in this statute, although some decisions assume that victimizing non-natural persons (but still non-governmental entities) violates the provision before us.  E.g., United States v. Darrell, 828 F.2d 644, 647 (10th Cir. 1987) (bank loan).  Nevertheless, both case law, e.g., United States v. Herrera-Martinez, 525 F.3d 60, 66 (1st Cir. 2008), and the legislative history, S. Rep. No. 94-938(I), at 391-92 (1976), reprinted in 1976 U.S.C.C.A.N. 3439, 3820-21, support a broad reading of § 408.  And in various contexts where it makes sense, courts have read "person" to include governments and governmental

---

[3]Compare Vt. Agency of Natural Res., 529 U.S. at 787; Will v. Mich. Dept. of State Police, 491 U.S. 58, 64 (1989), with United States v. Bly, 510 F.3d 453, 463-64 (4th Cir. 2007); United States v. Fountain, 768 F.2d 870, 802 (7th Cir. 1985); see also United States v. Ekanem, 383 F.3d 40, 43-44 (2d Cir. 2004) (word "victim" in Mandatory Victims Restitution Act includes governments and is not limited by Dictionary Act's definition of "person")

units. E.g., Inyo County, 538 U.S. at 711 (giving examples); see also note 3, above.

Statutes are customarily read, where language permits, to address the mischief that is Congress' target. United States v. New England Coal & Coke Co., 318 F.2d 138 (1st Cir. 1963). Here, the potential use of an altered card to obtain "anything of value" could easily harm the government; the most obvious "person" who might be thus defrauded is the Social Security Administration, but state and local governments are also likely targets. Indeed, the Social Security laws specifically authorize states to make use of Social Security numbers in administering certain laws, including the issuance of driver's licenses.[4]

The bulk of the penalty provisions in § 408 are concerned with defrauding the government of payments and benefits, and several of the purposes proscribed by § 408(a)(7) have the same concern. 42 U.S.C. § 408(a)(1)-(7); Herrera-Martinez, 525 F.3d at 66. The presence of these other "purpose" provisions could mean that Congress chose other ways of coping with fraud against the government; but the "anything of value" language appears to go beyond the payments and benefits to which the other provisions are

_____

[4]Precisely, this includes "the administration of any tax, general public assistance, driver's license, or motor vehicle registration law within its jurisdiction"; states also can require that any individual affected by such laws provide their Social Security numbers to the state or state agency. 42 U.S.C. § 405(c)(2)(C)(i); see also id. § 405(c)(2)(C)(v).

-9-

largely directed. In fact, it is not clear that the other provisions would reach defrauding a state issuing driver's licenses.

Further, the penalties were not enacted as an ensemble. The original 1935 Social Security Act, ch. 531, Title II, § 208, 49 Stat. 625, relevantly prohibited making false statements in applications for payments; but thereafter, and with increasing frequency, Congress amended the criminal provisions.[5] So there is nothing surprising about overlapping coverage. "Redundancies across statutes are not unusual events in drafting . . . ." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 250 (1992); accord SEC v. Nat'l Sec., Inc., 393 U.S. 453, 468 (1969) ("[S]ome overlap [between different provisions] is neither unusual nor unfortunate"). Significantly, Congress was almost always expanding coverage and increasing penalties. See note 5, above.

---

[5]Amendments to § 408 occurred in 1939, 1950, 1954, 1958, 1960, 1972, 1976, 1981, 1984, 1988, 1990, 1994, 2000, and 2004. See 42 U.S.C.A. § 408, Historical and Statutory Notes (West 2010). For examples of the substantive changes made, the 1972 amendments added two subsections to prohibit more types of conduct; the 1976 amendments added one subsection and also added the "for any other purpose" language; the 1981 amendments made violations of the section a felony instead of a misdemeanor, increased the punishment from one to five years in prison and the penalty from $1,000 to $,5000, and added the "for the purpose of obtaining anything of value from any person" language; the 1984 amendments increased the penalty to $25,000 for certain repeat offenders and gave courts the discretion to require full or partial restitution; and the 2000 amendments added two additional subsections. Id.

Persichilli says the statute uses the word "person" in several other places where it can only apply to natural persons, and a single consistent meaning should be assumed. E.g., Comm'r v. Lundy, 516 U.S. 235, 250 (1996). But this is not an invincible inference, e.g., Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 595 (2004); nor is there any real inconsistency merely because in some provisions the word "person" might have no applications that pertained to non-natural persons. Finally, Persichilli's claim notwithstanding, some other references to "person" in the statute could apply to non-natural persons.[6]

Any Other Purpose. Persichilli also argues that the alternative purpose charged in this case under § 408--"for any other purpose"--is unconstitutionally vague and does not reach the conduct charged here. Both he and the government assume that this issue needs to be decided even though, as we read the statute, the first purpose--"obtaining anything of value from any person"--was legally sufficient. This accords with the usual rule--there are exceptions--that a general guilty verdict should be set aside if

_____

[6]For example, Persichilli points to a portion of 42 U.S.C. § 408(a)(7) that reads "for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled," and says that the word person here can only mean a natural person; but non-natural persons too can receive payments or benefits under Social Security and other government programs. E.g., Wash. State Dep't. of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 376 (2003) (Social Security benefits); Fischer v. United States, 529 U.S. 667, 679-81 (2000) (Medicare benefits).

there is a legal error, as opposed to mere evidentiary inadequacy, with respect to one of multiple charged objects. Griffin v. United States, 502 U.S. 46, 51-56 (1991).

Here, the jury verdict form did not use the phrase "for any other purpose"; instead, it said that the jury could find guilt if Persichilli had the purpose of obtaining anything of value from a person and/or "the purpose of obtaining a new identity that would enable him to remain a fugitive from justice." The latter quoted phrase does not refer to value at all and can properly be read as invoking the "any other purpose" prong. If that prong were invalid, as Persichilli urges, arguably the charge in that respect was prejudicial error.

However, there is nothing vague about the phrase "for any other purpose": if taken at face value, it emphasizes that an intended or accomplished alteration must be purposeful and not inadvertent. This is expansive but not at all vague. Nor does this negate the need to show bad intent under the prong in question: the wrongful act involved--"knowingly possess[ing] a Social Security card or counterfeit Social Security card . . . with the intent to alter it," 42 U.S.C. § 408(a)(7)(C)--already contains a scienter requirement, namely, possession with intent to alter.

Persichilli argues that to read "any purpose" literally would render superfluous the phrase "for the purpose of obtaining anything of value from any person," which was added to the statute

-12-

after the "for any other purpose" clause was already in force; but Congress may well have wanted to add specificity about known dangers while keeping the catch-all clause in the statute to be sure that other purposes, not readily imagined, were also encompassed. After all, it is not easy to think of good reasons why any private alterations should be authorized.

Persichilli suggests that the "any purpose" clause cannot be read literally because it would criminalize an innocent alteration, such as a woman crossing out her maiden name and inserting her married name. But some such hypothetical case can be imagined for many statutes (e.g., defense counsel bringing burglary tools to court as an exhibit). Prosecutors usually use good sense in such cases, and, when they occasionally do not, they find juries unwilling to convict and courts ready to find implied exceptions or other flaws.

Aggravated Identity Theft. Persichilli's last argument challenges his conviction for aggravated identity theft on the grounds that his conviction for intent to alter a Social Security card cannot serve as a predicate offense under the aggravated identity theft statute. The operative portion of the identity theft statute reads:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such

-13-

> felony, be sentenced to a term of imprisonment
> of 2 years.

18 U.S.C. § 1028A(a)(1). This provision, adopted long after the Social Security Act, enhances penalties for a number of different criminal acts under different statutes.

Subsection (c), enumerating predicate felonies, includes among eleven paragraphs cross-referencing other chapters or sections of the U.S. Code the following paragraph (numbered 11):

> section 208, 811, 1107(b), 1128B(a), or 1632
> of the Social Security Act (42 U.S.C. 408,
> 1011, 1307(b), 1320a-7b(a), and 1383a)
> (relating to false statements relating to
> programs under the Act).

18 U.S.C. § 1028A(c)(11). The first of the provisions listed in this paragraph, section 208, 42 U.S.C. § 408, includes the alteration provision under which Persichilli was convicted.

Nevertheless, Persichilli says the alteration charge is not a predicate crime under the identity theft statute because the parenthetical after the several cross-references in paragraph 11 describes them as "relating to false statements" and so excludes his crime because he was convicted of intent to alter a Social Security card, not of making false statements. But the parenthetical is not phrased as a limitation: it merely provides a short-hand description of what several of the cited sections primarily cover.

Persichilli cites to Herrera-Martinez as a case that gave substantive effect to language in a parenthetical. But the

-14-

parenthetical there--which reads "(or any other program financed in whole or in part from Federal funds)"--came in the middle of a paragraph describing an element of a crime and expanded the statute's reach to any such other program. 525 F.3d at 65. A mere summary description of a cross-reference, as in paragraph 11, is a different matter and cannot alter the unambiguous language that encompasses violations of section 208 without qualification.

Persichilli also says that Congress intended for only acts of fraud, theft, or deception to be predicate offenses. He points out that most predicate crimes enumerated in 18 U.S.C. § 1028A involve fraud, theft, or deception; that a regulatory definition of the term identity theft uses the word "fraud" and does not mention possession, 16 C.F.R. § 603.2 (2009); and that the Sentencing Guidelines that apply to 42 U.S.C. § 408 do not have an enhancement for mere possession, U.S.S.G. § 2B1.1(10).

Yet Congress "enumerated" section 208 without limiting its application to only some of the offenses included within it, so no ambiguity exists. See Atl. Fish Spotters Ass'n v. Evans, 321 F.3d 220, 223-24 (1st Cir. 2003). And Congress could quite reasonably have thought that possessing a Social Security card with intent to alter it is almost inevitably a precursor to the precise types of fraud and deception that Persichilli says the aggravated identity theft statute aims to punish more severely.

-15-

Finally, Persichilli notes that some of the enumerating paragraphs begin with the phrase "any provision contained in" a specified portion of the U.S. Code; because § 1028A(c)(11) does not include this phrase, he infers that not all of 42 U.S.C. § 408 is encompassed.  But all the sub-sections that begin with this phrase cross-reference an entire chapter of the U.S. Code, 42 U.S.C. § 1028A(c)(4), (5), (6), (7), (10), while all the sub-sections that reference particular sections of the Code omit this language, id. § 1028A(c)(1), (2), (3), (8), (9), (11).

In sum, Persichilli was properly convicted of the alteration and subjected to the higher penalties for aggravated identity theft.  His conviction and sentence are affirmed.

It is so ordered.

-16-