14-1091-cr
*U.S. v. Tonawanda Coke Corp.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of January, two thousand sixteen.

PRESENT:  PIERRE N. LEVAL,
 JOSÉ A. CABRANES,
 RAYMOND J. LOHIER, JR.,
  *Circuit Judges.*

---

UNITED STATES OF AMERICA,

　　　　　*Appellee,*　　　　　　　　　　　　　　14-1091-cr

　　　　v.

TONAWANDA COKE CORP.,

　　　　　*Defendant-Appellant.*[*]

---

**FOR APPELLEE:**　　　　　　　　　　JOHN EMAD ARBAB, U.S. Department of
　　　　　　　　　　　　　　　　　　Justice, *for* John C. Cruden, Assistant
　　　　　　　　　　　　　　　　　　Attorney General, Washington, DC
　　　　　　　　　　　　　　　　　　(Joseph J. Karaszewski, Assistant United
　　　　　　　　　　　　　　　　　　States Attorney, *on the brief, for* William J.

---

[*] The Clerk of Court is directed to amend the official caption to conform with the caption above.

Hochul, Jr., United States Attorney, Western District of New York, Buffalo, NY).

**FOR DEFENDANT-APPELLANT:**                    KEVIN MILES KEARNEY, Hodgson Russ LLP, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (William M. Skretny, *Chief Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Defendant-appellant Tonawanda Coke Corp. ("TCC") appeals the District Court's March 26, 2014 judgment adjudicating it guilty of offenses under the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, and imposing a sentence that includes, among other elements, a requirement of community service. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

TCC's principal contention on appeal is that its conviction on Counts 17, 18 and 19 of the indictment — the RCRA counts — should be reversed because TCC lacked fair notice that its conduct was criminal under RCRA. It further argues that its conviction on Count 17 should be reversed because the charged conduct occurred outside the limitations period; that the District Court erred in failing to deliver to the jury a so-called specific unanimity instruction with respect to Count 17; and that the District Court "abused its discretion" in requiring that TCC, as a form of community service, fund two studies designed to evaluate the effects of its conduct. We reject each of these arguments and affirm.

Our threshold inquiry concerns the standard of review applicable to TCC's fair-notice argument. The government contends that we should review only for plain error because TCC failed to preserve its argument below, Gov't Br. 37-38, and we agree. *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 163 (2d Cir. 2011) ("Arguments raised for the first time on appeal are deemed waived."); *United States v. Williams*, 399 F.3d 450, 454 (2d Cir. 2005) (plain-error doctrine permits, in certain circumstances, correction of trial-court errors not raised below). In the proceeding before the District Court, TCC moved to dismiss the RCRA counts, supporting its motion with a 37-page opening memorandum and a 20-page reply memorandum. These filings contained much in the way of garden-variety statutory-interpretation argument but devoted between them no more than the following sentence arguably addressed to the issue of fair notice: "In view of the government's explanation of its legal theories regarding the meanings of the terms 'active management' and 'storage' as they relate to Count 17 and the meaning of the term 'land disposal' as it relates to Counts

2

18 and [19], the Defendant respectfully submits that these counts should also be dismissed based on the application of the rule of lenity." J.A. 241.

This passing remark, devoid of explanation, was insufficient to preserve TCC's fair-notice argument. We have held that, to preserve an issue for appeal, a party is obliged to "offer *some* argument or development of [the issue]" below; "merely incant[ing]" legal phrases before the District Court is not enough. *United States v. Griffiths*, 47 F.3d 74, 77 (2d Cir. 1995) (emphasis in original) (concluding that the government failed to preserve argument when it twice "invoked the mantra 'search incident to arrest'" before the trial court but did not develop the point); *see also United States v. Herrera-Martinez*, 525 F.3d 60, 65 n.5 (1st Cir. 2008) ("A mere assertion that the rule of lenity ought to mandate acquittal cannot be said to have preserved the issue."). This requirement is particularly salient in view of the argument that TCC failed to develop. The rule of lenity "applies only if, after using the usual tools of statutory construction, [the court is] left with a grievous ambiguity or uncertainty in the statute." *Robers v. United States*, 134 S. Ct. 1854, 1859 (2014) (internal quotation marks omitted). Nothing in the competing briefs below suggested that this rigorous standard was met. TCC and the government advanced opposing views concerning the proper interpretation and application of the relevant RCRA provisions, but such disagreement (not unusual in litigation) does not ordinarily indicate insoluble statutory ambiguity. If TCC thought such ambiguity was present in this case, it was obligated to explain its position — not simply to flag the issue of lenity and leave to the District Court the task of filling in its argument.

Accordingly, we apply plain-error review to TCC's fair-notice argument. "[T]he plain error doctrine permits a trial court error, not properly preserved for appeal, to warrant appellate relief when four factors are present: there must be an error, the error must be plain, the error must affect substantial rights, and the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Williams*, 399 F.3d at 454 (internal quotation marks omitted). TCC does not appear to contend that it is entitled to relief under this standard; in its briefing, it argues that the District Court erred but fails even to address the other elements of the plain-error test. We therefore conclude that TCC's fair-notice claim cannot survive review for plain error.

TCC next argues that Count 17 of its July 29, 2010 indictment charged conduct that occurred outside of the applicable five-year statute of limitations, *see* 18 U.S.C. § 3282(a), and should therefore have been dismissed as time-barred. Count 17 alleged that TCC knowingly "stored" hazardous waste without a permit, in violation of 42 U.S.C. § 6928(d)(2)(A), from May 1998 to December 2009. J.A. 61. The government contends that Count 17 was not time-barred because the unpermitted "stor[age]" of hazardous waste is a so-called continuing offense, and the limitations clock therefore did not start until December 2009. Reviewing the question *de novo*, *see City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011), we agree with the government.

A statute of limitations typically begins to run "when the crime is complete." *United States v. Eppolito*, 543 F.3d 25, 46 (2d Cir. 2008) (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)).

"The time at which a crime is complete depends largely on the nature of the crime. Some crimes are instantaneous; others are continuing. A continuing offense is, in general, one that involves a prolonged course of conduct; its commission is not complete until the conduct has run its course." *Id.* (internal quotation marks and citations omitted). We presume that offenses are not continuing, but will conclude otherwise when circumstances so warrant: when "the explicit language of the substantive criminal statute [at issue] compels [the] conclusion that Congress intended the offense in question to be construed as a continuing one, as where the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one, or where the statutory language describing the offense contemplates a prolonged course of conduct." *Id.* at 46-47 (alterations in original) (internal quotation marks and citations omitted).

We have no trouble concluding that the unpermitted "stor[age]" of hazardous waste under 42 U.S.C. § 6928(d)(2)(A) is a continuing offense. The statutory definition of "storage" provides that "[t]he term 'storage,' when used in connection with hazardous waste, means the containment of hazardous waste, *either on a temporary basis or for a period of years*, in such a manner as not to constitute disposal of such hazardous waste," 42 U.S.C. § 6903(33) (emphasis supplied); thus, "the statutory language describing the offense contemplates a prolonged course of conduct," *Eppolito*, 543 F.3d at 47 (internal quotation marks omitted). It is unsurprising that Congress, in enacting RCRA, employed language indicating that it understood "storage" to be a continuing offense. "Storage" of hazardous waste is in its nature similar to a crime of possession, and crimes of possession are generally regarded as continuing. *See, e.g.*, *United States v. Waters*, 23 F.3d 29, 36 (2d Cir. 1994) (observing that possession is a continuing offense); *United States v. Berndt*, 530 F.3d 553, 554-55 (7th Cir. 2008). A person might initially store an item, or come to possess it, in a moment; but once stored or possessed, the item generally remains so until some affirmative act terminates the period of custody. *See Berndt*, 530 U.S. at 555 ("Everyday experience tells us that we possess things until we lose them, abandon them or they are taken from us."). And as is true of possession of contraband, "each day[ ]" that hazardous waste is stored "bring[s] a 'renewed threat of the substantive evil Congress sought to prevent.'" *Eppolito*, 543 F.3d at 47 (quoting *Toussie*, 397 U.S. at 122).

TCC advances several arguments in support of its position that storage of hazardous waste is not a continuing crime, but none is convincing. It argues, first, that 42 U.S.C. § 6928(d)(2)(A) makes it unlawful not just to "store[ ]" hazardous waste without a permit, but to "treat[ ]" it or "dispose[ ]" of it; observing that neither treatment nor disposal seems a plausible candidate for continuing-offense treatment, TCC contends that "storage" should be treated the same as its statutory companions. But TCC identifies no reason why these three discrete forms of proscribed conduct must be subject to the same limitations period. Nor can we think of one. Each, after all, is defined separately in RCRA's "Definitions" section, and each comprises different elements, *see* 42 U.S.C. § 6903(3) (defining "disposal"); *id.* § 6903(33) (defining "storage"); *id.* § 6903(34) (defining "treatment"); we have no cause to think that Congress expected each to be treated identically for limitations purposes. We likewise find no merit in TCC's second argument: that the gravamen of its

4

unlawful conduct was "active management," not "storage," and "'active management' does not imply a continuing offense." Def. Br. 53. TCC was not convicted of actively managing hazardous waste. It was convicted of storing hazardous waste. The jury was instructed that it could not convict TCC of a storage offense without making the threshold determination that TCC had actively managed the waste it stored, *see* J.A. 1709-10, but the presence of this additional predicate for liability does not change the essential nature of the crime charged.

Accordingly, we conclude that "stor[age]" of hazardous waste in violation of 42 U.S.C. § 6928(d)(2)(A) is a continuing offense and that Count 17 did not charge conduct that occurred outside the limitations period.

TCC's third argument, also directed at Count 17, is that the District Court should have specifically instructed the jury that it could not convict unless it found unanimously that TCC had engaged in at least one particular act of "active management." Reviewing the District Court's charge *de novo*, *see United States v. White*, 552 F.3d 240, 246 (2d Cir. 2009), we find no error. "A general instruction on unanimity is sufficient to insure that . . . a unanimous verdict is reached, except in cases where the complexity of the evidence or other factors create a genuine danger of jury confusion," *United States v. Schiff*, 801 F.2d 108, 114-15 (2d Cir. 1986) (citations omitted), and we perceive no such danger in this case. The jury was repeatedly instructed that it had to be unanimous to convict, *see* J.A. 1730, 1733-34; it was told that TCC had not violated RCRA unless it had "actively managed" the waste it stored, *see* J.A. 1709; and it found (unanimously) that TCC had violated RCRA every day from May 1998 (when the first alleged act of "active management" occurred) until December 2009, *see* J.A. 1814. TCC's suggestion that the jury is likely to have encountered confusion concerning the need for unanimity simply because the alleged acts of "active management" were "distinct events, separated by time and by their basic nature," *see* Def. Br. 55, finds no support in the record or in our case law.

Finally, we reject TCC's argument that the District Court "abused its discretion" in imposing, as a special condition of probation, a requirement that TCC fund (at a cost of $12,200,000) two evaluative studies designed to investigate the effects of its conduct on human health and the environment. According to TCC, absent a finding that its behavior caused measurable harm of either type, this condition of probation is neither "reasonably related to the factors set forth in section 3553(a)(1) and (a)(2)" nor "reasonably necessary for the purposes indicated in section 3553(a)(2)." 18 U.S.C. § 3563(b); *see also* U.S.S.G. § 8B1.3 (policy statement concerning imposition of community service on organizational defendants providing that "[c]ommunity service may be ordered as a condition of probation where such community service is reasonably designed to repair the harm caused by the offense").

TCC's argument relies on too narrow a conception of "harm." The District Court found — irrespective of whether TCC's conduct has resulted in demonstrable physical injury to the environment or to the people living near its plant — that it has caused harm to those members of

5

the public who are reasonably concerned that their property or their health has been compromised by the effects of TCC's illegality. *See* J.A. 2245-46. The law takes account of this kind of injury in other contexts. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183-84 (2000) (citizens' "reasonable concerns about the effects of [defendant's] discharges . . . directly affected [their] recreational, aesthetic, and economic interests," satisfying the injury-in-fact requirement and giving rise to standing). We cannot conclude — particularly in view of district judges' "wide discretion in determining what sentence to impose," *United States v. Ryan*, 806 F.3d 691, 693 (2d Cir. 2015) (internal quotation marks omitted) — that the District Court erred in taking account of it here.

Nor are we convinced that TCC's sentence is improper because the studies it funds might produce evidence relevant to a pending civil case in which it is a defendant. We are not aware of (and TCC has not identified) any authority standing for the proposition that a criminal sentence, otherwise appropriate in all respects, is rendered improper because it might bear incidentally on civil litigation. Accordingly, we conclude that in requiring TCC to fund evaluative studies designed to determine the effects of its conduct, the District Court acted within its broad authority to fashion a just sentence.

## CONCLUSION

We have reviewed all of TCC's arguments on appeal and find them to be without merit. We thus **AFFIRM** the March 26, 2014 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6